BENDER WELDING AND MACHINE
COMPANY, INC., et al., Plaintiffs,

v.

M/V SOVEREIGN OPAL, etc., in rem,
and Sovereign Marine Lines, Inc., in
personam, Defendants.

Nos. 75–479–T, 75–501–T, 75–509–T, 75–
519–T to 75–521–T and 75–608–T.

United States District Court,
S. D. Alabama, S. D.

June 22, 1976.

David A. Bagwell, Alex F. Lankford, III, Mobile, Ala., for Bender Welding and Machine Co.

Ross Diamond, III, Mobile, Ala., for plaintiffs.

G. V. Parker, Mobile, Ala., for Strachan Shipping Co.

George W. Finkbohner, Jr., Mobile, Ala., for Saunders Engine and Equipment Co.

J. W. Goodloe, Jr., Mobile, Ala., for Gulf Clarklift Inc.

John H. Tappan, Mobile, Ala., for Mobile Sales & Service Corp.

Edward S. Sledge, III, Mobile, Ala., for Malaga Inn.

Richard S. Toder, New York City, for Landis C. Stovall, Trustee in Bankruptcy for Sterling Navigation.

## ORDER

DANIEL HOLCOMBE THOMAS, Senior District Judge.

This matter came on to be heard by the Court on the motion of the plaintiff, Bender Welding and Machine Company, Inc., (Bender), for distribution of proceeds from the sale of the M/V SOVEREIGN OPAL and her equipment which was sold at public auction on December 5, 1975, for the payment of her debts, her owners being unable to meet current operating expenses. Specifically, the plaintiff Bender seeks an ascertainment of the sum due to each claimant of the proceeds of the sale of the M/V SOVEREIGN OPAL (SOVEREIGN OPAL), and the order of priority to which the different claimants are entitled to be paid. Moreover, Bender moves the court to compile a distribution schedule in accordance with the respective priority as to each of the claimants who have presented their claims out of the proceeds of the sale of the SOVEREIGN OPAL.

In its memorandum, Bender suggests a schedule for the distribution of proceeds. Bender contends that after the payment of custodial and litigation expenses, the remaining funds should be distributed according to the following priorities: "Class I (Seamen), Class II (Service Liens), Class III (Non-Lien Claimants)."[1] Basically, the court is in agreement with the order of priority suggested by the plaintiff; however, the issues to be determined concern the class each claimant is to be placed and the amount and validity of the seamen's respective claims.

## EXPENSES IN CUSTODIA LEGIS

█ It is well settled that claims arising from the care and custody of the vessel while in the custody of the court through the United States Marshal have priority to lien claims. *New York Dock Co. v. The Poznan*, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955, 1927 A.M.C. 723 (1927); Gilmore and Black, The Law of Admiralty, 737 (2d Ed. 1975) (hereinafter Gilmore & Black). In the instant case, the SOVEREIGN OPAL was seized on behalf of the plaintiff Bender on October 21, 1975. Subsequently, the vessel was sold on December 5, 1975, and the sale of the vessel was confirmed on December 11, 1975. Judgment was entered in favor of Bender on January 6, 1976, against both the vessel *in rem* and Sovereign Marine Lines, Inc., *in personam* for services, materials, supplies and services furnished by Bender to the SOVEREIGN OPAL. During this interim Bender as court-appointed custodian of the SOVEREIGN OPAL incurred custodial charges and expenses in the amount of $4,500.00.[2] In addition, Bender filed a claim for expenses in connection with the sale of the vessel and a

---

1. Plaintiff's Memorandum at 1.

2. Bender Shipbuilding Repair Company, Invoice Number 4252, dated January 21, 1976.

forklift. The amount of the claim representing expenses incident to publication of notices in the Mobile Press Register is $290.00.[3]

■ Finally, Bender contends that it incurred expenses in the amount of $1,151.00 for the removal of a forklift from the SOVEREIGN OPAL. The plaintiff asserts that this particular claim should be paid as an expense *in custodia legis*, or, in the alternative, Bender should be reimbursed for the removal expenses by Gulf Clarklift, Inc.[4] Having considered said claim, the Court is of the opinion that Bender, as custodian, is entitled to reimbursement from the proceeds. Accordingly, the Court finds that these claims are expenses *in custodia legis*.

## SEAMEN'S CLAIMS

■ There can be no dispute that claims by seamen for wages have the highest priority among maritime liens. Gilmore & Black at 738. In order to determine the amount and validity of the respective claims, and for clarity of discussion, the Court will place the seamen into two categories: Category I concerns eleven seamen. Category II pertains to the. claims of third engineer, Jude de Cunha and Shankar Narayan, the vessel's chief engineer and the vessel's master, Robert D. McDonald.

The eleven crew members[5] seek to recover penalty wages, earned wages, vacation pay, transportation expenses and severance pay from the proceeds of the sale of the SOVEREIGN OPAL. The issues surrounding these respective claims are somewhat

beclouded by the sequence of events which may be briefly capsulated as follows: These eleven seamen are Indian citizens who served aboard the SOVEREIGN OPAL. Each crew member was paid his wages through September 30, 1975. However, when the SOVEREIGN OPAL was arrested on October 20, 1975, these seamen had only received partial payment of wages due for service aboard the vessel. On October 21, 1975, the eleven Indians were ordered to leave the SOVEREIGN OPAL and report to the SOVEREIGN EDITH in Tampa, Florida. An issue to be determined centers on whether these individuals were in fact transferred or discharged from their employment contracts in Mobile, Alabama. Prior to their departure, the SOVEREIGN EDITH by virtue of a process of maritime attachment was arrested by a United States Marshal in Tampa on October 20, 1975.[6] Notwithstanding the SOVEREIGN EDITH's attachment, these eleven crew members, following the instructions of their employer, came to Tampa. On October 21, 1975, one day after the SOVEREIGN EDITH was under arrest at the time of their arrival, they remained aboard the vessel performing their duties as crew members.

The Court is of the opinion that the Class I seamen are entitled to earned wages from the proceeds of the SOVEREIGN OPAL. The proper amounts are computed by adding earned wages and overtime less payments made. Accordingly, the eleven crew members are to receive the following:

to have those costs paid as expenses *in custodia legis*.

---

**3.** Bender Exhibit A, Exhibit B, Exhibit C, attached to Pleading # 124.

**4.** On November 24, 1975, Gulf Clarklift, Inc. filed a motion for leave to intervene in the above-styled cause seeking to recover a forklift truck that was placed aboard the vessel on October 3, 1975. The intervention motion was granted on December 4, 1975, and the forklift was allowed to be removed from the vessel. Bender opposed the motion contending that the forklift was part of the vessel. However, Bender, in accordance with the Court's order had the forklift removed. Plaintiff later filed a motion for reimbursement of those removal expenses by Gulf Clarklift or, in the alternative,

**5.** The eleven Indian citizens who served aboard the SOVEREIGN OPAL are: Gopinath Dass, Hasham Hussain, Ahmed Ensof Khanchey, Hidayathusian Yusuf Khanchey, Anand Singh Negi, Kamalesh Purkayastha, Pramod Sarang, Khaliram Sharma, Ravidutt Sharma, Jagir Signh, Kundire Mandappa Somaiah.

**6.** See Civil Action No. 75–770–Civ.–T–H, United States District Court for the Middle District of Florida, Tampa Division.

| | | |
|---|---|---|
| 1. | Gopinath Dass | $116.00 |
| 2. | Hasham Hussain | 203.50 |
| 3. | Ahmed Ensof Khanchey | 663.66 |
| 4. | Hidayathusian Yusuf Khanchey | 447.26 |
| 5. | Anand Singh Negi | 112.50 |
| 6. | Kamalesh Purkayastha | 52.25 |
| 7. | Pramod Sarang | 86.91 |
| 8. | Khaliran Sharma | 111.91 |
| 9. | Raviduṫt Sharma | 282.93 |
| 10. | Jagir Singh | 538.91 |
| 11. | Kundire Mandappa Somaiah | 72.25 |
| | TOTAL | $2688.08 |

## PENALTY WAGE CLAIM

The eleven seamen claim that they are entitled to penalty wages under 46 U.S.C. § 596.[7] In opposition to the seamen's penalty wage claims Bender contends that penalty wages cannot be awarded in this action in that insolvency prevented the payment of wages and that the eleven crew members were not discharged from employment but were transferred to another vessel owned by the same shipowner in Tampa.[8]

■ It is well settled that the insolvency of the owner of a vessel is a sufficient cause and negates any penalty wage claim. *The*

*Pacific Hemlock*, 3 F.Supp. 305, 307 (D.C. Wash.1932). Accordingly, "where delay in payment, as here, is due to the insolvency of the owner and the arrest of the vessel" a claim made for penalty wages cannot be sustained. *Collie v. Ferguson*, 281 U.S. 52, 56, 50 S.Ct. 189, 191, 74 L.Ed. 696 (1930); *Arguelles v. U. S. Bulk Carriers, Inc.*, 408 F.2d 1065, 1070 n. 6 (CA4 1969), *aff'd*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1970); *Payne v. S.S. Tropic Breeze*, 274 F.Supp. 324, 335 (D.P.R.1967), *rev'd other grounds*, 412 F.2d 707 (CA5 1968); *Peterson v. S.S. Wahcondah*, 235 F.Supp. 698, 700 (E.D.La.1964). In the case at bar, the evidence clearly indicates that the owners of the vessel were insolvent and that the vessel had been libelled for an amount in excess of her value.[9] Captain McDonald in his deposition stated that the ship was "very insolvent". McDonald dep. at 80. Accordingly, the Court is of the opinion that the financial inability of the owners of the SOVEREIGN OPAL is a good defense to a claim for penalty wages. Therefore, all

---

**7.** 46 U.S.C. § 596 reads in pertinent part as follows:

The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; . . . and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; . . . .

**8.** Plaintiff's Memorandum at 4–5. *See* Deposition of Captain Robert D. McDonald at 16, 19, 37, 56, 63, 71, 80, and 86.

**9.** On March 22, 1976, Sovereign Marine Lines, Inc. was adjudicated a bankrupt in United States District Court for the Southern District of New York. *See*, In the Matter of Sovereign Marine Lines, Inc. In Bankruptcy No. 76 B 410. With regard to the adjudication of Bankruptcy of Sovereign Marine Lines, Inc., the Court is of the opinion that this bankruptcy action will not effect the distribution of proceeds of the sale of the SOVEREIGN OPAL in

that the sale of the vessel had been completed in this district before the time that the bankruptcy action was filed in the New York district court. It has been held that the subsequent filing and adjudication by the bankruptcy court will have no effect upon an earlier filed *in rem* action:

When a ship has been seized by the Marshal under *in rem* process before the filing of a petition in bankruptcy the ship does not come under the control of the bankruptcy court. The action cannot therefore be enjoined and will proceed to final adjudication and a sale of the ship unless the bankruptcy trustee has procured its release under bond. Gilmore and Black at 807. See *the Philomena*, 200 F. 859 (D.Mass.1911)

Assuming, however, that a conflict existed between the admiralty and bankruptcy courts, which is not the case here, "the court which has first secured custody of the property is entitled to retain possession and determine all the lien claims which may be assessed against the vessel." 1 Collier on Bankruptcy ¶ 2.10 at 180. Accordingly, this Court will proceed with the distribution of proceeds from the sale of the SOVEREIGN OPAL to the *in rem* lienors. As this distribution will exhaust all proceeds, the Court will not address the problem of whether any remnants could validly be distributed to non-lien claimants.

claims for penalty wages are hereby DE-NIED.

### SEPARATION, VACATION AND REPATRIATION CLAIMS

The eleven crew members seek separation, vacation and repatriation pay from the proceeds of the SOVEREIGN OPAL. Plaintiff Bender asserts that these claims should not come out of the SOVEREIGN OPAL proceeds in that the seamen were transferred to the SOVEREIGN EDITH by the same shipowner in Tampa, Florida. Bender's position is that these men were transferred and not discharged from the SOVEREIGN OPAL and that the crew members voluntarily accepted their transfers. The employment contracts between Sovereign Marine Agency (employer) and the above-named employees for service aboard the SOVEREIGN OPAL set forth several pertinent provisions that are necessary in order to determine the transfer versus termination versus discharge dilemma:

1. PERIOD OF AGREEMENT

This agreement shall be effective for 12 months from the date of Employee's departure from the Republic of India to join the M/V SOVEREIGN OPAL.

Should the period of contract terminate without suitable relief being present, the Employee shall continue his respective assignment until a suitable relief is provided and such additional duty shall not be until the next port. . . .

5. HOLIDAYS

(T)he crew members shall be entitled to four (4) days leave per month payable upon termination of his services on board or pro-rate.

8. ALLOWANCE FOR DISMISSAL

In case the Employer dismisses the Employee before expirating (sic) this agreement term and reason of the dismissal is exclusively resulted with Employer, the Employer agrees to pay as the allowance for dismissal one (1) months wages.

10. TRANSFER

The Employer reserves the right to transfer the Employee to any other of his own vessels as he sees fit.

11. TRANSPORTATION

Traveling expenses for return passage to India after termination of this Agreement is for the account of the Employer and will be by air only. The Employee should pay himself for his returning home if he terminates this employment prior to expiration of this agreement.

Repatriation of the crew, resulting from injury or sickness, shall be for the Employer's account.

12. DISCHARGE

The employer reserves the right to discharge Employee for justifiable cause including but not limited to the following:

Neglect of duty and insubordination
Drunkeness (sic)
Inability to perform duties assigned
Criminal Act
Pilferage
Willful or neglectful destruction of vessels cargo
Willful or neglectful destruction of Owner's property.

All expenses incurred due to the above causes shall be the responsibility of the Employee.

13. SALE OR TRANSFER OF VESSEL

Owner reserves right to terminate this agreement at any time because of sale, transfer, loss, abandonment, laying up or any other reason which will render the vessel inactive, but shall give timely notice of such termination and shall bear all repatriation expenses.

█ Clearly, there can be no dispute that the eleven crew members adhered to their contractual obligations. When they were ordered to leave the SOVEREIGN OPAL and report to the SOVEREIGN EDITH, they did so immediately. However, when they departed from Mobile, Alabama, on October 21, 1975, they had no knowledge that their employer's vessel in Tampa, Florida, was already under seizure by United States Marshal. Upon their arrival in Tampa, these Indian nationals came aboard an arrested vessel. Admittedly the deposition testimony of the Master McDonald contains

language to the effect that the crewmen were being transferred. However, Captain McDonald was not aware of the arrest of the SOVEREIGN EDITH on October 20, 1975. The eleven crewmen all had written contracts for service aboard the SOVEREIGN OPAL. Granted, Sovereign Marine Agency, as employer, can transfer these men from vessel to vessel. Yet when their employment is terminated they are entitled to repatriation, vacation and severance pay. When crew members are sent from one vessel that has been arrested to another vessel already under seizure their employment contracts have in fact been terminated. Having considered the bizarre arrangement of "transfer" the Court is of the opinion that the employer breached its employment contracts with the crew members by terminating their employment in Mobile, Alabama. Accordingly, the Court directs that these individuals are entitled to severance and vacation pay.

■ As to the claims for repatriation provided for in Section 11 of the "Agreement for Employment" the Court is aware that these eleven seamen have already received travel expenses to return to Bombay, India. By an order entered on December 15, 1975, by the United States District Court in Tampa, Florida, each crew member who left the SOVEREIGN OPAL to come

to the SOVEREIGN EDITH received a payment of $1,000.00 for travel expenses.[10] Counsel for the eleven Indian nationals contends that travel expenses should be paid from the proceeds of the SOVEREIGN OPAL in that the crew members' contracts terminated in Mobile. Moreover, counsel asserts that the order issued by the district court in Tampa on December 15, 1975, could ultimately be altered so as to withdraw the funds disbursed to the crew members for travel expenses. Admittedly, when a vessel is taken in custody, having been seized by a United States Marshal, no new liens against her may accrue. *Vlavianos v. The Cypress*, 171 F.2d 435 (CA4 1948), *cert. denied*, 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732 (1949); 2 Benedict on Admiralty, § 46 (7th ed. rev. 1975). However, in the instant case it would seem that the travel payments made to the crew members cannot be classified as new liens. At that juncture the issue as to who was the owner of the SOVEREIGN OPAL and the SOVEREIGN EDITH was still not resolved. Southern Marine Lines, Inc. is the corporation named in both civil actions. Having considered the claim for travel expenses for the crew members who in fact have received payment and have returned to their homeland, the Court is of the opinion that repatriation should not be disbursed from the funds of the SOVEREIGN OPAL.

---

10. *Shippers Stevedoring Company v. Sovereign Marine Lines, Inc., Strachan Shipping Company, et al. Intervening Plaintiffs*, C.A. No. 75–770–Civ.–T–H. See order for partial disbursement of proceeds of sale entered December 15, 1975, by the district court which reads in pertinent part as follows:

As to the eleven (11) crew members of Indian citizenship who came to the SOVEREIGN EDITH from SOVEREIGN OPAL in Mobile the disbursement of any money to them from the proceeds of the sale of SOVEREIGN EDITH is in dispute. However, the men have been unable to find seagoing employment elsewhere and they cannot remain ashore in the United States. Hence the Court hereby directs that a payment of $1000.00 for travel expenses from Tampa, Florida, to India be made to each of them checks drawn to the joint order of their attorney Earl R. McMillin and each of them as follows:

1. A. Negi
2. G. Dass
3. H. Hussain
4. K. Somaiah
5. K. Purkayastha
6. P. Sarang
7. K. Sharma
8. Ravi Sharma
9. H. Khanchey
10. A. Khanchey
11. Jagir Singh

It is further ordered that no counsel fee or other charge for expenses be taken from the foregoing amounts by Earl R. McMillin.

. . . (S)hould it ultimately be held that money now paid the crew should more properly have come from the proceeds of the future sale of SOVEREIGN OPAL or any other vessel, nothing done by this disbursement shall bar recovery from the fund created by such future sale or sales on a subrogation by the individual crew members to the use and benefit of other intervening parties.

## SHANKAR NARAYAN'S CLAIMS

Chief Engineer Narayan served aboard the SOVEREIGN OPAL and received base wages of $1,150.00 per month, plus overtime at the rate of $4.50 per hour, from September 30, 1975, through October 23, 1975. Narayan received his wages through September 30, 1975, however, since that date has only received $470.25. Moreover, under the terms of his contract of employment he is entitled to earned vacation pay at the rate of four days per month during his service aboard the vessel, separation pay of one month's base wages, and transportation expenses to his point of engagement in Bombay, India. Having determined that Narayan has a valid lien claim against the vessel, the Court DIRECTS that Narayan be paid the following from the proceeds of the sale of the vessel:

| | | |
|---|---|---|
| Earned Wages | | $843.26 |
| Overtime | | $324.00 |
| Vacation | | $153.32 |
| Separation | | $1,150.00 |
| Repatriation | | $723.34 |
| | Total | $3,193.92 |

For the reasons heretofore discussed, the claim made for penalty wages is denied.

## JUDE de CUNHA'S CLAIMS

Jude de Cunha served aboard the SOVEREIGN OPAL as third engineer, at base wages of $615.00 per month, plus overtime at the rate of $3.50 per hour, from August 15, 1975, through October 23, 1975. Mr. de Cunha received earned wages through September 30, 1975, however, since that date has been paid only $409.50. As stipulated under the terms of his agreement of employment, he is entitled to vacation which accrued at the rate of four days per month during his service aboard the vessel, overtime, and transportation expenses to his point of engagement, Bombay, India. The Court is of the opinion that this is a valid lien claim and therefore, Jude de Cunha is

entitled to the following from the proceeds of the sale of the SOVEREIGN OPAL:

| | | |
|---|---|---|
| Earned Wages | | $451.00 |
| Overtime | | $262.40 |
| Vacation | | $184.50 |
| Separation | | None |
| Repatriation | | $723.34 |
| | Total | $1,621.24 |

Penalty wage claim is denied. Furthermore, the documents introduced by the Master Robert D. McDonald do not show that Jude de Cunha is entitled to separation pay.

## CAPTAIN ROBERT D. McDONALD'S CLAIM

■ Robert D. McDonald served as Master aboard the SOVEREIGN OPAL and from August 6, 1975, through October 23, 1975, received base wages in the amount of $1,450.00 per month. Captain McDonald received his full wages through September 30, 1975, but has not been paid any wages for his service aboard the vessel from October 1, 1975, through October 23, 1975. Further, under the terms of the Captain's contract of employment, he is entitled to earned vacation pay which accrued at the rate of four days per month during his service aboard the vessel and for transportation expenses to his point of engagement in Vancouver, Canada. Counsel for the Master also seeks penalty wages pursuant to 46 U.S.C. § 596.

Strachan Shipping Company, one of the claimants herein, objects to the claim of Mr. McDonald to the proceeds of the sale of the SOVEREIGN OPAL on the ground that as master of said vessel, he is not entitled to a maritime lien. In support of its objection, Strachan Shipping Company asserts that although masters of vessels registered, enrolled or licensed under the laws of the United States have now been given a lien by statute [11] (46 U.S.C.A. § 606) this does not apply to masters of foreign vessels. *P. T. Perusahaan Pelayaran Samudera Trikora Lloyd v. Salzachtal*, 373 F.Supp. 267, 280 n.

11. 46 U.S.C.A. § 606. Master's lien for wages reads:
    The master of a vessel documented, registered, enrolled, or licensed under the laws of the United States shall have the same lien for his wages against such vessel and the same priority as any other seaman serving on such vessel. (Apr. 25, 1968, P.L. 90–293, § 1(a) 82 Stat. 107.)

8 (E.D.N.Y.1974); *Payne v. The S.S. Tropic Breeze,* 423 F.2d 236, 242–243 (CA1 1970). The basic issue to be determined is whether McDonald was the master of a foreign vessel. Admittedly, exhibits have been offered with the deposition of Captain McDonald indicating that the SOVEREIGN OPAL is under the ownership of BALBOA NAVIGATION S.A. and sails under the Panamanian Flag and Registry.[12] However, there are documents including a test survey report which indicate that Sovereign Lines owns the SOVEREIGN OPAL.[13] Moreover, the employment contracts entered into between the crew members and their employer was with Sovereign Marine Agency.[14] Furthermore, every individual overtime statement approved by the master contained the name of Sovereign Marine Agency. In his deposition the Captain stated that Sovereign Marine Agency is the owner of the SOVEREIGN OPAL. McDonald dep. at 7. There is no evidence that Sovereign Marine Agency is a different corporation from Sovereign Marine Lines, Inc., which is located in Oyster Bay, New York, and is the named defendant in this action. Notwithstanding the disputed ownership of the vessel and in the interests of equity and justice, the Court is of the opinion that the master has a maritime lien and therefore, is entitled to the following:

| | | |
|---|---|---|
| Earned Wages | | $1,063.25 |
| Vacation | | $579.96 |
| Separation | | None listed |
| Repatriation | | $194.37 |
| | Total | $1,837.58 |

Claim for penalty wages is hereby denied.

### MALAGA INN'S CLAIMS

▉ Malaga Properties, Inc., a corporation doing business as the Malaga Inn, claims as a maritime lienor, for unpaid hotel bills by several officials of the owners of the SOVEREIGN OPAL. The Malaga Inn seeks to be placed in Class II (Service Liens). In support of its position, the lienor asserts that the individuals were seamen and that their services were necessary to the ship's operation and therefore, the Malaga Inn is entitled to unpaid bills in the amount of $3,236.15. Basically this claimant relies upon the deposition of Captain McDonald and upon *Brown v. The Alexander McNeil,* 4 Fed.Cas. 353 (No. 1988) (D.C. S.D.Ga.1974). The Court is of the opinion that *Brown* is distinguishable from the case at bar. Moreover, having reviewed the master's testimony, the Court finds that the individual occupants of the Inn were not seamen of the defendant vessel. As stated by the master, they were not seamen of the SOVEREIGN OPAL but were employed in a supervisory capacity by Sovereign Marine (dep. at 67) and that their duties were not aboard the vessel but were land-based. (dep. at 91).

It is uncontradicted that the individuals staying at the Inn were not in need of emergency boarding as in the case of stranded seamen. Additionally, the lodging of these individuals did not contribute to the navigational ability or advancement of the SOVEREIGN OPAL. Accordingly, it would seem that under the facts presented it would be improper to place the claim of the Malaga Inn in Class II. Although the Inn's claim may be maritime in nature, it is a maritime non-lien claim. Gilmore & Black at 625. Having determined that the claim is non *in rem* it is not necessary to discuss the merits of an *in personam* claim.

Having considered all claims made by the respective parties, the Court hereby DIRECTS that the Clerk of the United States District Court for the Southern District of Alabama make the following distribution of funds from the proceeds of the sale of the SOVEREIGN OPAL in accordance with the distribution schedule entered by the Court.

---

12. Bender Exhibits 1, 2 to dep. of Robert D. McDonald.

13. Bender Exhibit "C".

14. Bender Exhibits 8, 9, Agreement of Employment.

DISTRIBUTION SCHEDULE
TOTAL AMOUNT IN REGISTRY OF COURT
$72,809.60

In Custodia Legis Expenses

```
$ 4,500.00
     290.00
   1,151.00
      72.00  (Marshal's fee for forklift sale)
   6,013.00
```

CLASS I SEAMEN
(Category I)

| NAME | WAGES | VACATION | SEVERANCE | TOTAL |
|---|---|---|---|---|
| Gopinath Dass | $116.00 | $70.00 | $210.00 | $396.00 |
| Hasham Hussain | $203.50 | $70.00 | $210.00 | $483.50 |
| Ahmed Ensof Khanchey | $663.66 | $383.33 | $1,150.00 | $2,196.99 |
| Hidayathusian Yusuf Khanchey | $447.26 | $186.66 | $700.00 | $1,333.92 |
| Anand Singh Negi | $112.50 | $48.00 | $180.00 | $340.50 |
| Kamalesh Purkayastha | $52.25 | $70.00 | $210.00 | $332.25 |
| Pramod Sarang | $86.91 | $83.33 | $250.00 | $420.24 |
| Khaliran Sharma | $111.91 | $70.00 | $400.00 | $581.91 |
| Ravidutt Sharma | $282.93 | $166.60 | $500.00 | $949.53 |
| Jaqir Singh | $538.91 | $283.33 | $850.00 | $1,672.24 |
| Kundire Mandappa Somaiah | $72.25 | $70.00 | $210.00 | $352.25 |
| | | | TOTAL | $9,059.33 |

CLASS I SEAMEN
(Category II)

| NAME | EARNED WAGES | OVERTIME | VACATION | SEPARATION | REPATRIATION | TOTAL |
|---|---|---|---|---|---|---|
| Shankar Narayan | $843.26 | $324.00 | $153.32 | $1,150.00 | $723.34 | $3,193.92 |
| Jude de Cunha | $451.00 | $262.40 | $184.50 | None | $723.34 | $1,621.24 |
| Robert D. McDonald | $1,063.25 | - - - | $579.96 | None | $194.37 | $1,837.58 |
| | | | | | TOTAL | $6,652.74 |

TOTAL AMOUNT TO BE AWARDED TO
CLASS I
$15,712.07

As to CLASS I SEAMEN in Categories I and II, the Court DIRECTS that payment to each of the above-named individuals be made payable by check drawn to the order of their attorney, Ross M. Diamond, III.

CLASS II SERVICE LIENS

| LIENOR | AMOUNT | PERCENTAGE OF FUNDS AVAILABLE TO CLASS | AMOUNT TO BE PAID |
|---|---|---|---|
| Saunders Engine Co. | $1,916.70 | 1.33% | $679.43 |
| Mobile Oil Corp. | $2,397.50 | 1.68% | $858.22 |
| ... | | | |

| LIENOR | AMOUNT | PERCENTAGE OF FUNDS AVAILABLE TO CLASS | AMOUNT TO BE PAID |
|---|---|---|---|
| Gulf Clarklift Inc. | $5,299.30 | 3.67% | $1,874.80 |
| Strachan Shipping Co. | $6,766.77 | 4.68% | $2,390.76 |
| Mobile Sales and Supply Co. | $10,235.84 | 7.09% | $3,621.89 |
| J. Kamil Co., Inc. | $36,375.57 | 25.19% | $12,868.19 |
| Bender Welding & Machine Co. | $81,380.00 | 56.36% | $28,791.24 |
| TOTAL | $144,371.68 | 100% of Funds Available to Class | $51,084.53 |

CLASS III: NON-LIEN CLAIMS

| CLAIMANT | AMOUNT | PERCENTAGE OF FUNDS AVAILABLE TO CLASS |
|---|---|---|
| Malaga Properties Inc. | $3,236.15 | N/A Funds Exhausted |
| St. Joe Stevedoring Co. | $7,740.21 | N/A Funds Exhausted |
| Fillette Greene & Co. | $13,581.33 | N/A Funds Exhausted |
| Pate Stevedoring Co. | $68,503.69 | N/A Funds Exhausted |
| Strachan Shipping Co. | $188,979.45 | N/A Funds Exhausted |
| TOTAL | $282,040.83 | |

The Court, having considered all claims made by the respective parties in the above-styled action and in each of the above-numbered consolidated actions, is of the opinion that there is no just reason for delay, and therefore, DIRECTS that this Order is hereby entered as a FINAL JUDGMENT as to the parties herein.

No further costs to be taxed in this matter.