600 So.2d 1131 (1992)
GILMAN YACHT SALES, INC., Appellant/Cross Appellee,
v.
FIRST NATIONAL BANK OF CHICAGO, Appellee, and Ira Kaufman, Appellee/Cross Appellant.
Nos. 90-1013, 90-1499 and 90-2310.
District Court of Appeal of Florida, Fourth District.
February 19, 1992.
*1132 Shelley H. Leinicke of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, for appellant/cross appellee.
David L. Gorman of David L. Gorman, P.A., North Palm Beach, for appellee and appellee/cross appellant.
STREITFELD, JEFFREY E., Associate Judge.
This case presents three consolidated appeals brought by plaintiff/appellant Gilman Yacht Sales, a luxury yacht broker, from adverse summary judgments entered in its suit for a commission against the purchaser of a vessel, Ira Kaufman, and the court-appointed sales agent, First National Bank of Chicago. We affirm the summary judgment in favor of First National Bank of Chicago, affirm in part and reverse in part the summary judgment in favor of Ira Kaufman, and affirm the attorneys' fees rulings of the trial court.
The parties agree that in early 1986 the M/V Southerly, a 144-foot yacht, was arrested in rem by the United States Marshall Service pursuant to a warrant issued by the United States District Court, Southern District, incident to the foreclosure of a maritime lien by The First National Bank of Chicago (First National). The United *1133 States District Court appointed First National to act as sales agent for the vessel, rather than holding a traditional foreclosure sale. Pursuant to an order by the district court, First National solicited offers from brokers in an attempt to sell the yacht for the best price, and the proposed sale, including all disbursements of the sale proceeds, would be reviewed and approved by the district court before closing. A five percent brokerage commission was guaranteed by First National.
On July 17, 1986, Ira Kaufman called Gilman Yacht Sales on the telephone to discuss the purchase of a yacht. Kaufman spoke with William Sanderson, a broker employed by Gilman, and the details of the conversation are in dispute. Gilman claims that Sanderson spoke at length about the Southerly. Sanderson testified that he spoke for about fifteen minutes to Kaufman about the Southerly and another vessel. It is undisputed that, after the conversation, Sanderson registered Kaufman with First National as Gilman's client.
Reviewing the record in a light most favorable to Gilman, this initial conversation with Sanderson provided Kaufman with his first information about the Southerly, and Sanderson later furnished written information about and photos of the Southerly (among others) to Kaufman. No negotiation or proposed agreements developed, however.
Kaufman later entered into negotiations directly with First National for the purchase of the Southerly without involving Gilman or its agent Sanderson. Kaufman and First National entered into a contract for the sale of the Southerly for $4,000,000. The sale took place in December of 1986 but no funds were disbursed to First National until the district court approved the sale and ordered disbursement in June of 1987. Gilman was not paid a commission on the sale by First National or Kaufman. Although Gilman was aware of these proceedings, Gilman did not file a claim in the United States District Court, even though it asserted to First National that it introduced Kaufman to the Southerly.
Gilman sued First National and Kaufman in a nine-count (second amended) complaint. Counts I, VII, VIII, and IX were against First National for breach of contract, intentional interference with a business relationship, conversion of a brokerage commission, and unjust enrichment. Counts II through VI were against Kaufman for civil theft, intentional interference with a business relationship, conversion, fraud, and unjust enrichment. The suit was filed prior to the June 1987 order of the United States District Court disbursing the sale proceeds.
In April of 1989 the trial court entered partial summary judgment in favor of Kaufman on the civil theft, conversion, and unjust enrichment counts, and in March of 1990 summary judgment was entered in favor of Kaufman on the remaining counts for intentional interference with a business relationship and fraud. The trial court called this second summary judgment "summary judgment of dismissal" because there were no remaining counts of the complaint pending against Kaufman. Gilman moved for rehearing which was denied.
In April of 1990 Gilman filed an appeal of the summary judgments entered in favor of Kaufman as well as the denial of rehearing. Kaufman cross appealed the denial of his earlier motion to dismiss the second amended complaint.
First National moved for summary judgment based on various grounds including lack of subject matter jurisdiction and sovereign immunity. The trial court found that First National was acting at all relevant times as an agent of the United States government by order of the United States District Court, Southern District, that the causes of action by Gilman against First National were barred by the doctrine of sovereign immunity, and that the federal court had exclusive jurisdiction. Gilman appealed the entry of summary judgment in favor of First National in June of 1990.
In the meantime Kaufman moved for attorney's fees and costs based on his prevailing on the civil theft count. He also asked for fees and costs based on Gilman's alleged unreasonable refusal of a settlement *1134 offer under section 45.061, Florida Statutes (1987). The trial court granted the motion for fees and costs under the civil theft statute, section 812.035(7), but denied the motion based on the refusal of settlement. After the trial court held a hearing and determined the amount of fees and costs owed to Kaufman ($4,912), Gilman appealed the order and Kaufman cross appealed the denial of fees and costs based on the refusal of settlement.

THE CLAIMS AGAINST IRA KAUFMAN
The judgment against Gilman and in favor of Kaufman is affirmed in part and reversed in part. The following causes of action were properly summarily resolved adverse to Gilman:
1. Violation of sections 812.012 and 812.014, Florida Statutes, brought under section 812.035, Florida Statutes (1985) ("civil theft")  see Rosen v. Marlin, 486 So.2d 623 (Fla. 3d DCA 1986), and its progeny, there being no proof of an independent theft or conversion beyond an alleged breach of contract;
2. Conversion  see Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1971);
3. Fraud  there being no evidence of any representation made by Kaufman relied upon by Gilman to its detriment (citations unnecessary).
However, the causes of action alleging intentional interference with an advantageous business relationship and unjust enrichment must be reversed, as material issues of fact remain in dispute that preclude entry of summary judgment as to these facially viable claims. Gilman alleges that Kaufman knew of Gilman's relationship with First National, that Gilman had registered Kaufman's name and that Kaufman was able to buy the Southerly at a lower price by cutting out Gilman and eliminating the five percent commission otherwise due and payable. These disputed facts create triable issues. See Stutzke v. D.G.C. Liquidation Co., 533 So.2d 897 (Fla. 4th DCA 1988); American Medical Int'l v. Scheller, 462 So.2d 1 (Fla. 4th DCA 1984). Craig W. Sharp P.A. v. Adalia Bayfront Condominium Ltd., 547 So.2d 674 (Fla. 2d DCA 1989).
Since the summary judgment in favor of Kaufman on the civil theft claim is affirmed, so is the award of attorney's fees. The amount awarded is supported by the evidence, and no abuse of discretion has been shown.
On the cross appeal, no abuse of discretion has been shown or that the trial court erred in finding that Gilman unnecessarily refused to settle with Kaufman, pursuant to section 45.061, for the sum of $100. We therefore do not need to reach the constitutional issue raised by Gilman.

THE CLAIMS AGAINST FIRST NATIONAL BANK OF CHICAGO
The viability of Gilman's claims against First National depend upon the answers to the following questions:
1. Was First National acting as an agent of the United States District Court?
2. If so, are the claims against First National claims against the United States government?
3. If so, are the claims barred by the doctrine of sovereign immunity, or
4. If not, are the claims exclusively within the jurisdiction of the federal courts?
The answers to questions one and two are in the affirmative. It is undisputed that the bank was appointed by the United States District Court to act as its agent in administering the sale of the Southerly. The court retained the sale authority to approve the sale and distribution of the proceeds.
28 U.S.C. § 2671 provides in material part:
As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the judicial and legislative branches... .
Employee of the government includes ... persons acting on behalf of a federal *1135 agency in an official capacity, temporarily or permanently in the service of the U.S., whether with or without compensation.
The trial court concluded that both the tort and contract claims were barred by the doctrine of sovereign immunity. As to the tort claim asserting interference with a contractual right or relationship, or economic advantage, the trial court was correct. 28 U.S.C. § 2680 specifically excludes such suits from the limited waiver of sovereign immunity provisions of the federal tort claims act. Art Metal  U.S.A., Inc. v. United States, 753 F.2d 1151 (D.C. Cir.1985).
As to the tort claim of conversion, no evidence supporting the elements of this cause of action was present. Belford Trucking. Had such proofs been available, exclusive jurisdiction lies with the federal court. 28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346.
However, breach of contract claims are not barred by the doctrine of sovereign immunity. While the immunity has been waived, original and exclusive jurisdiction over such claims lies in the district court or the court of claims, depending on the amount in controversy. 28 U.S.C. § 1346(a)(2), (b).
To the extent that it may not be encompassed by 28 U.S.C. § 1346, Gilman's unjust enrichment claim requires additional analysis. A quasi contract, or contract implied in law, sometimes referred to as a constructive contract, is an obligation imposed by law on the grounds of justice and equity, usually to prevent unjust enrichment. 11 Fla.Jur.2d Contracts § 236.
Admiralty has long recognized the court's duty to insure that expenses contributing to the fund are paid. 2 Benedict on Admiralty § 46 (7th Ed., Rev.); New York Dock Co. v. The Poznan, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927). These "in custodia legis" expenses encompass a variety of costs and expenses incurred while the vessel is in the court's custody including costs generated by the vessel's sale. Bender Welding & Machine Co. v. M/V Sovereign Opal, 415 F. Supp. 772 (S.D.Ala. 1976). Furthermore, payment of in custodia legis expenses are treated preferentially to maritime liens in the disbursing the proceeds of the judicial sale. New York Dock Co. v. The Poznan; J.W. Stone Oil v. Red Rose, 1987 AMC 137 (E.D.La. 1985). Clearly, these liens are incidental to the in rem proceeding.
Gilman failed to assert his claim for a commission during the pendency of the in rem proceeding before the federal district court. Gilman made no effort to move the court to reconsider the order of sale, to stay the federal court order distributing the funds, or to appeal the federal court order. Allowing Gilman to circumvent the jurisdiction of the federal district court of what is essentially a claim incidental to an in rem proceeding, by permitting a quasi contract/unjust enrichment claim, would invite unnecessary state-federal jurisdiction friction and, therefore, the trial correctly declined to exercise jurisdiction. O'Neill v. Schoenbrod, 374 So.2d 70 (Fla. 3d DCA 1979).
Therefore, the summary judgment in favor of First National Bank of Chicago is affirmed in all respects. The summary judgment in favor of Ira Kaufman is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent herewith.
GLICKSTEIN, C.J., and FARMER, J., concur.