**WEST KENTUCKY COAL CO. v. DILLMAN.***

**In re METROPOLIS TOWING CO.**

(Circuit Court of Appeals, Eighth Circuit. September 25, 1926.)

No. 7076.

1. **Bankruptcy ⚖═210—Transfer of suit in admiralty to enforce maritime lien against steamer to bankruptcy division of court held not abuse of discretion.**

Transfer of suit in admiralty to enforce maritime lien against steamer to bankruptcy division of court *held* not abuse of discretion, where owner of steamer was adjudged bankrupt before it was seized by marshal in admiralty suit.

2. **Bankruptcy ⚖═467.**

Findings of referee in bankruptcy, supported by evidence and approved by trial judge, will not be disturbed.

3. **Maritime liens ⚖═24.**

Seller of coal to towing company for general use *held* not entitled to maritime lien against steamer, under Act June 23, 1910, §§ 1, 4 (36 Stat. 604, 605), as re-enacted by Act June 5, 1920, § 30, subsecs. P, S (Comp. St. §§ 8146¼ooo, 8146¼ppp).

4. **Maritime liens ⚖═28.**

Seller of coal furnished steamer for fuel on master's order *held* entitled to maritime lien against vessel under Act June 23, 1910, §§ 1, 4 (36 Stat. 604, 605), as re-enacted by Act June 5, 1920, § 30, subsecs. P, S (Comp. St. §§ 8146¼ooo, 8146¼ppp).

5. **Payment ⚖═43—General payments entered in account as general credits could not later be applied arbitrarily to liquidate certain items.**

General payments of towing company to coal company, which had furnished coal for general use and also for particular vessels, entered as general credits in account, should be

*Rehearing denied December 20, 1926.

applied to items in order of dates, and could not be later applied arbitrarily to liquidate certain items.

**6. Maritime liens ⬡⟶61.**

As against claim of general creditors, plea of laches of claimant of maritime lien *held* without merit.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit in admiralty was filed by the West Kentucky Coal Company to enforce a maritime lien against the steamer Metropolis. Later the steamer was ordered released to Frank Dillman, trustee in bankruptcy of the Metropolis Towing Company, bankrupt, which was owner of the steamer Metropolis, and the suit was transferred to the bankruptcy division of the court. From an order, affirming an order of the referee disallowing the lien, but allowing the claim as an unsecured claim, plaintiff appeals. Reversed, with directions.

James G. Wheeler, of Paducah, Ky. (Wheeler & Hughes, of Paducah, Ky., and Benson C. Hardesty, of Cape Girardeau, Mo., on the brief), for appellant.

C. G. Shepard, of Caruthersville, Mo., (E. E. Alexander, of Blytheville, Ark., on the brief), for appellee.

Before LEWIS, Circuit Judge, and MUNGER and JOHNSON, District Judges.

JOHNSON, District Judge. The West Kentucky Coal Company filed a suit in admiralty in the court below on the 30th day of June, 1921, to enforce a maritime lien against the steamer Metropolis for coal alleged to have been furnished the steamer upon the order of the master, between the 26th day of June, 1920, and the 14th day of May, 1921, amounting to $7,098.33. Later the bill was amended, increasing the amount to $8,316.19. The vessel was seized by the marshal on the 1st day of July, 1921. On June 20, 1921, the Metropolis Towing Company, owner of the steamer Metropolis, was adjudicated a bankrupt in the court below. A trustee was appointed July 9th. Later the court ordered the marshal to release the steamer to the trustee in bankruptcy and transferred the suit of the coal company to the bankruptcy division of the court "for trial upon the issues as framed by the pleadings filed, or by such amendments as may be properly allowed, according to the course and practice of this court in causes of admiralty and maritime jurisdiction."

The court further ordered that the cause "be referred to Hon. H. E. Alexander, referee in bankruptcy, to take and hear such testimony as the nature of the case may require, and to determine whether under the admiralty law the libelant and intervening libelant are entitled to maritime liens, and to enforce such lien or liens, if allowed or adjudged to exist, against the bond heretofore given for the release of said vessel from the custody of the United States marshal and against the principal and sureties on said bond; that pending the hearing and determination before the referee and such review and appeals as may be had, if any, said bond shall be and remain in full force and effect."

The referee heard the case and disallowed the lien claimed by the coal company against the steamer, but allowed the claim as an unsecured claim against the estate of the bankrupt. Upon review the trial court confirmed the order of the referee. The coal company has appealed from the order of the District Court.

[1] The first question presented is one of procedure. The appellant asserts that its suit in admiralty could not be lawfully transferred to the bankruptcy division of the court and heard by the referee, as was done in this case. In the absence of any act of Congress fixing the procedure in such cases, the question presented is not without difficulty. The Bethulia (D. C.) 200 F. 862; The Casco (D. C.) 230 F. 929. Courts of admiralty and bankruptcy courts are by statute given exclusive jurisdiction within their peculiar spheres, but the jurisdiction of both is vested in the District Courts of the United States. Each of these divisions of the court below had jurisdiction of the subject-matter of this litigation. The steamer, from the moment the towing company was adjudicated a bankrupt, was in the constructive possession of the bankruptcy division of the court. In admiralty the court had jurisdiction to seize the steamer at the suit of the coal company. In the administration of the estate of the towing company in bankruptcy the court had jurisdiction to establish liens and determine priorities; in admiralty it had like jurisdiction in respect to maritime liens. Whether in any particular case the court will proceed in one division or in the other or in both in our opinion must be left, until Congress acts, to the sound discretion of the District Court. If by the order made in the court below the coal company was deprived of no substantial right, if it had an opportunity to be heard and present its evidence, and if the determination of the case was in accordance with admiralty law, we are of opinion appellant has no ground for com-

plaint. If, however, we were required here to decide between the two courts, we would be disposed to hold that the case was properly disposed of by the bankruptcy court which acquired constructive possession of the boat before the marshal's seizure. Taubel, etc., Co. v. Fox, 264 U. S. 426, 432, 44 S. Ct. 396, 68 L. Ed. 770.

Section 1 of the Act of Congress of June 23, 1910, 36 Stat. p. 604, re-enacted by Act June 5, 1920, 41 Stat. p. 1005, § 30, subsec. P, being Comp. Stat. § 8146¼ooo, provides:

"Any person furnishing repairs, supplies, * * *, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

And section 4 of the Act of June 23, 1910 (section 30, subsection S, of the Act of June 5, 1920, being Comp. St. § 8146¼ppp), provides:

"Nothing in this section shall be construed to prevent the furnisher of repairs, supplies * * * or other necessaries * * * from waiving his right to a lien * * * at any time, by agreement or otherwise; and this section shall not be construed to affect the rules of law now existing, in regard to (1) the right to proceed against the vessel for advances, (2) laches in the enforcement of liens upon vessels, (3) the right to proceed in personam * * *."

The referee and trial judge both found that all of the coal for which the coal company claimed a lien against the steamer Metropolis had been sold and delivered to the towing company personally and solely upon its credit, and that no part of the coal had been furnished as supplies to the steamer by the coal company, so as to entitle it to a lien against the steamer under the statute.

The deliveries of the coal covered by the libel may be grouped under two heads: (1) Those made in bargeload lots; (2) those made in less than bargeload lots.

[2, 3] There was evidence in behalf of the trustee tending to show that some of the coal for which the coal company filed its libel was ordered by the towing company from its office at Caruthersville, Mo.; that the coal so ordered was loaded by the coal company on barges belonging to it at Paducah, Ky., the place of business of the coal company, and that some of the loaded barges were taken by the coal company to Caruthersville, Mo., the home port and place of business of the tow-

ing company, and there delivered to and left with the towing company, to be unloaded as the coal was needed for use by the steamers and derrick boats of the towing company; that other of the loaded barges were delivered to the steamer Metropolis at Paducah, and towed by it to Caruthersville, and the coal unloaded as needed by the steamers and derrick boats of the towing company. The referee and trial judge accepted this version of the dealings between the parties as true and found that the barge deliveries were outright sales to the Towing Company for such use as it saw fit. This finding we may not disturb. Schlafly v. United States (C. C. A.) 4 F.(2d) 195; Fienup v. Kleinman (C. C. A.) 5 F.(2d) 137. And under it the coal company was not entitled to a lien against the steamer Metropolis for the coal so sold and delivered. Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97.

[4] The coal covered by the libel sold in less than bargeload lots was loaded at Paducah, Ky., or Memphis, Tenn., by the coal company directly on the steamer Metropolis or on flats belonging to the steamer and carried along for that purpose. There is no conflict in the evidence that this coal was ordered by the master as fuel for the steamer and furnished for that purpose by the coal company, and there is no evidence in the record tending to show that the coal company ever waived its right to a lien upon the steamer for this coal.

[5] The account of the coal company was carried in the name of the steamer Metropolis, with the name of the towing company written underneath. This account was of long standing. It was in balance on June 26, 1920. The account sued upon was between June 26, 1920, and May 14, 1921. In this account in January and February, 1921, items had been charged and noted on the margin as deliveries of coal to the towing company and to the steamer Dillman. Deliveries of coal charged in the account (including these items) were entered on the debit side of the ledger in the order of their dates. The towing company from time to time made general payments upon the account; the coal company entered such payments as general credits on the account. At the time the coal company brought suit, it arbitrarily offset enough of the cash standing to the credit of the towing company to liquidate the items of the account noted as furnished to the towing company and to the steamer Dillman. This the coal company had no right to do. The cash standing to the

credit of the towing company in the account should have been applied in payment of the items of the account in the order of their dates, including the items charged to the towing company and to the steamer Dillman. The Mary K. Campbell (D. C.) 40 F. 906; The Sophia Johnson (D. C.) 237 F. 406; The William B. Murray (D. C.) 240 F. 147.

After eliminating from the account the items paid by the cash credits and those items charged against the towing company and the steamer Dillman there is left the Memphis account and the last four items of the Paducah account. Two of the four items of the Paducah account were barge deliveries, which the referee and the trial court on conflicting evidence found were sold and delivered to the towing company for general use. This finding we will not disturb. The remaining two items of the Paducah account were for coal delivered to the steamer Metropolis for its use, as were also the deliveries made at Memphis. These amount to $1,681.86. The right of the coal company to enforce its lien for the coal deliveries represented in this sum was never waived. The coal represented in this sum having been furnished the steamer for its own use, and the right to enforce the lien not having been waived, the coal company was justly entitled under the statute to a lien upon the steamer Metropolis for said sum of $1,681.86. The Yankee, 233 F. 919, 147 C. C. A. 593; The Bronx, 246 F. 809, 159 C. C. A. 111; The Portland (C. C. A.) 273 F. 401.

[6] There is no basis in the record before us for the contention of the trustee that the coal company lost its right to claim the lien given it under the statute through laches in its enforcement. No lien claimant is contesting the right of the coal company to a lien, and the trustee is not contesting such right in behalf of any claimant shown by the record to be entitled to a lien, and as against the claims of general creditors the plea of laches is without merit. The question of priorities of lien claimants between themselves, if there are others besides the coal company, is not before us on this record.

The court below is directed to set aside the order allowing the claim of the coal company as a general claim against the estate of the bankrupt, and in lieu thereof enter an order allowing the coal company a maritime lien against the steamer Metropolis, for the sum of $1,681.86 and allowing the balance of its claim, amounting to $6,634.33, as a general claim against the estate of said bankrupt. Appellant to recover its costs, including such part of premiums paid on account of bonds given in the cause as $1,682 bears to $8,316.