### In re CARLOMAGNO SHIPPING, S.A.

### Civ. A. No. 95–1215.

United States District Court,
E.D. Louisiana.

July 27, 1995.

Christopher Ogilvie Davis, S. Ault Hootsell, III, Kent A. Lambert, Phelps Dunbar, New Orleans, LA, for Carlomagno Shipping, S.A.

Richard W. Bussoff, Monroe & Lemann, New Orleans, LA, for DnB Holdings Ltd. and Den Norske Bank A/S (London Branch).

### ORDER AND REASONS

CLEMENT, District Judge.

Appellant, Carlomagno Shipping, S.A. ("Carlomagno"), has appealed the Bankruptcy Court's denial of its motion for payment of administrative expenses, pursuant to 11 U.S.C. § 506(c). This appeal raises a jurisdictional conflict between this Court, sitting in admiralty, and the Bankruptcy Court.

## I. BACKGROUND

Carlomagno, the appellant-debtor in this bankruptcy proceeding, is a shipping company engaged in the business of carrying cargo from the United States to Mexico. Carlomagno's sole asset is the M/V HERMITAGE ("the vessel"). Faced with a demand for payment from its largest secured creditors, appellees DnB Holdings Limited and Den Norske Bank A/S (London Branch) (collectively "DnB"), Carlomagno filed, on October 25, 1993, in this district, a petition for bankruptcy relief. On August 5, 1994, the Bankruptcy Court entered an order modifying the automatic stay, which allowed DnB to bring the vessel to a United States port, from Mexico, and to enforce its mortgage *in rem* against the vessel. On October 21, 1994, DnB commenced foreclosure proceedings.[1] That foreclosure proceeding was brought pursuant to the Court's admiralty jurisdiction. 28 U.S.C. § 1333. The vessel was sold by the United States Marshal at a public sale for $6,010,000.00 on January 12, 1995. This Court confirmed that sale on January 20, 1995.

In May, 1994, and January, 1995, the Bankruptcy Court approved fee applications from Carlomagno's attorneys, Phelps Dunbar, L.L.P. The Bankruptcy Court further accorded those fees priority as administrative expenses, pursuant to 11 U.S.C. § 503. Carlomagno then filed a motion with the Bankruptcy Court to have those administrative expenses given a first priority lien against the proceeds of the sale of the vessel, pursuant to 11 U.S.C. § 506(c). DnB objected and questioned both the Bankruptcy Court's jurisdiction to consider the request and whether Carlomagno was entitled to the lien.

The Bankruptcy Court concluded that it did have jurisdiction to consider Carlomagno's motion. Having considered the merits of the section 506(c) motion, the Bankruptcy court concluded that Carlomagno was not entitled to a first priority lien. Carlomagno appealed that order to this Court.

## II. ANALYSIS

The threshold issue for this Court's consideration is whether the Bankruptcy Court had jurisdiction to consider Carlomagno's request. The determination of jurisdiction is a question of law. The Bankruptcy Court's rulings on questions of law "are subject to plenary review on appeal." *In re Delta Towers, Ltd.,* 924 F.2d 74, 76 (5th Cir.1991).

The question presented for decision is whether, having previously modified the automatic stay, the Bankruptcy Court had jurisdiction to consider Carlomagno's petition for an administrative priority as to funds that were within the jurisdiction of the admiralty court. The Bankruptcy Court had, without question, jurisdiction over the vessel prior to its order allowing DnB's foreclosure action to go forward. Moreover, the mere lifting of the stay did not divest that court of jurisdiction over the vessel, which was property of the estate. *See In re Oakes,* 129 B.R. 477, 479 (Bankr.N.D.Ohio 1991) (holding that the bankruptcy continues to have jurisdiction over the property following the lifting of the stay); *In re Fricker,* 113 B.R. 856, 864 (Bankr.E.D.Pa.1990) (holding that lifting the automatic stay does not deprive a bankruptcy court of jurisdiction over the property).

In this case, however, the property did not sit idle following the lifting of the automatic stay. Rather, this Court sitting in admiralty asserted its jurisdiction over the vessel. The vessel was seized by order of this Court and subsequently sold. At this time, the admiralty court has retained jurisdiction over the proceeds and will determine how they should be paid to the vessel's maritime lienors. Carlomagno asserts that despite the exercise of jurisdiction by this Court, the Bankruptcy Court retains jurisdiction over the property. Appellant's position is not without support in the jurisprudence.

In *In re Ridgemont Apartment Assocs.,* 105 B.R. 738 (Bankr.N.D.Ga.1989), a bankruptcy court terminated the automatic stay as to certain property of the estate. Following the lifting of the stay in that case, a state-court receiver was appointed to take possession of the collateral pending fore-

---

1. The foreclosure proceedings are still pending in Section J of this Court. *See DnB Holdings, Ltd.* *v. M/V Hermitage,* Civil Action No. 94–3434, Section J.

closure. The debtor then moved, in the bankruptcy court, for an order directing the receiver to pay certain expenses of the estate. That court held that "[n]otwithstanding relief from the stay, the bankruptcy court's jurisdiction of the property continues, but is subject to being changed." *Id.* at 741. Instead of divesting the bankruptcy court of jurisdiction, that court held that lifting the stay resulted in the end of the bankruptcy court's exclusive jurisdiction; the bankruptcy and state courts exercised concurrent jurisdiction over the property.[2] Despite finding that it had jurisdiction, the court refused to "disturb the state court custody in the exercise of its jurisdiction absent unusual and compelling circumstances." *Id.*

The *Ridgemont* court's holding that merely lifting the stay did not serve to terminate the bankruptcy court's jurisdiction over property of the estate is persuasive. That court's conclusion that the state court's exercise of jurisdiction over the *res* had no effect on the bankruptcy court's jurisdiction is not nearly so compelling.

While almost all courts recognize that lifting the automatic stay does not, in and of itself, divest the bankruptcy court of jurisdiction, they also acknowledge that subsequent events can compel "the court to relinquish jurisdiction." *See, e.g., In re Oakes,* 129 B.R. at 479. The assertion of *in rem* jurisdiction by an admiralty court is such a situation.

■ In *Morgan Guar. Trust Co. v. Hellenic Lines,* 38 B.R. 987 (S.D.N.Y.1984), the district court was confronted with a jurisdictional issue similar to that *sub judice.* In that case, the bankruptcy court "lifted the automatic stay of Section 362 to permit the prosecution of admiralty proceedings in courts of competent jurisdiction against [the

debtor's vessels]." *Id.* at 991. The district court, sitting in admiralty, held that once the stay had been lifted "there [was] no jurisdictional clash." *Id.* Instead, the admiralty court "retain[ed] exclusive jurisdiction over the vessels and their freights." *Id.* at 992. This Court agrees with the reasoning of the *Hellenic Lines* court. It is well established that "when a court of competent jurisdiction takes possession of property through its officers, that property is withdrawn from the jurisdiction of all other courts." *Shing v. M/V MARDINA TRADER,* 564 F.2d 1183, 1188 (5th Cir.1977). In the absence of the automatic stay of section 362, the bankruptcy court was without jurisdiction to administer the proceeds of the sale of the vessel.[3]

It is not the mere vacating of the stay that divests the bankruptcy court of jurisdiction over the property. Rather, it is the subsequent action by the admiralty court, seizing and selling the vessel, that vests the district court with exclusive jurisdiction. The *Ridgemont* court was not confronted with this unique situation. Moreover, the *Ridgemont* court's conclusion that it had concurrent jurisdiction with the state court over the property does not fully address the question.

■ Even when two courts have concurrent jurisdiction over a single *res,* the jurisprudence recognizes that only one court can practically administer the property. Thus, the doctrine of *in custodia legis* has developed to resolve these jurisdictional conflicts. *See Hellenic Lines,* 38 B.R. at 996. While this doctrine does not reconcile all of the competing interests between the bankruptcy court and the state court, it does highlight the practical difficulties with the *Ridgemont* court's concurrent jurisdiction approach. In fact, the *Ridgemont* court recognized this

---

2. Counsel for DnB has misrepresented the holding of the *Ridgemont* court. Despite the clarity of the *Ridgemont* decision, 105 B.R. at 741 ("Notwithstanding relief from the stay, the bankruptcy court's jurisdiction of the property continues, but is subject to being changed."), counsel averred that "the bankruptcy court stated that it did not have jurisdiction over the" property. Although the Court agrees with DnB that the bankruptcy court did not have jurisdiction to consider Carlomagno's motion, this ruling should not be interpreted as condoning counsel's misrepresentation.

3. Clearly, prior to the lifting of the automatic stay the Bankruptcy Court's jurisdiction over the vessel was exclusive. *See In re Modern Boats, Inc.,* 775 F.2d 619, 620 (5th Cir.1985) (holding that "the petition for reorganization withdrew jurisdiction from the admiralty court and lodged it exclusively in the [bankruptcy] court"). It is the absence of the stay combined with the seizure and sale of the vessel, *in rem,* that confers exclusive jurisdiction on the admiralty court.

difficulty and refused to interfere with the state receiver. *In re Ridgemont Apartment Assocs.,* 105 B.R. at 741. Those cases that have relied on the *Ridgemont* decision for the proposition that lifting the stay does not divest the bankruptcy court of jurisdiction have not held that the retention of jurisdiction is permanent. *See In re Oakes,* 129 B.R. at 479 (stating that "under the reasoning of *Ridgemont,* this court continues to exercise jurisdiction ... *until such time as some action is taken which would compel this court to relinquish jurisdiction to [another] court*" (emphasis added)). In the instant case, continuing bankruptcy jurisdiction is inconsistent with the admiralty court's administration of the vessel, its sale, and the distribution of those proceeds to the maritime lienholders.

### III. CONCLUSION

The Bankruptcy Court denied Carlomagno's motion. This Court disagrees with the Bankruptcy Court's ruling on the jurisdictional issue but does agree that the motion should have been denied. Accordingly,

IT IS ORDERED that the final order of the Bankruptcy Court denying Carlomagno Shipping, Inc's., motion is AFFIRMED.