## MORGAN GUARANTY TRUST COMPANY OF NEW YORK, et al., Plaintiffs,

v.

## HELLENIC LINES LIMITED, et al., Defendants.

### No. 83 Civ. 8560 (RWS).

United States District Court, S.D. New York.

May 16, 1984.

---

Nourse & Bowles, New York City, for ITO; John E. Bradley, New York City, of counsel.

Bruce D. Scherling, P.C., New York City, for trustee.

## OPINION

SWEET, District Judge.

Plaintiffs International Terminal Operating Co. Inc., I.T.O. Corporation of Virginia, I.T.O. Corporation of Baltimore, I.T.O. Corporation, and Atlantic & Gulf Stevedores, Inc. (collectively "ITO") have moved for an order directing the payment by Hellenic Lines Limited and Hellenic American Agencies, Inc. (collectively "Hellenic") of certain freights of the M.V. HELLENIC GRACE, M.V. HELLENIC EXPLORER, M.V. HELLENIC CHAMPION, M.V. HELLENIC CHALLENGER, M.V. HELLENIC VALOR and M.V. HELLENIC PRIDE into the registry of the court. The freights were arrested by the United States Marshal for the Southern District of New York on December 12, 1983. For the following reasons, the motion of ITO is granted.

In an opinion dated February 23, 1984, this court held that it had exclusive jurisdiction over four arrested Hellenic vessels and their freights. The court concluded, however, that *custodia legis* did not apply to the remaining freights arrested by ITO because Hellenic had filed a subsequent petition for Chapter 11 reorganization under the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* The court concluded that the rehabilitative goal of a reorganization proceeding, and the corresponding need for supervision of the debtor's assets by a single court, outweighed any competing admiralty concerns. *Morgan Guaranty Trust Co. v. Hellenic Lines Limited,* 38 B.R. 987 at 995–997 (D.C.S.D.N.Y.1984).

On February 29, 1984, the Hellenic Unsecured Creditors Committee (the "Committee") voted to move the bankruptcy court for an order converting the Hellenic reorganization to a Chapter 7 liquidation. Hellenic opposed the Committee's motion, seeking instead to convert the proceeding to a Chapter 11 liquidation. On March 16, 1984, Bankruptcy Judge Burton Lifland granted the Committee's motion and ordered the Hellenic Chapter 11 proceeding converted to a Chapter 7 liquidation.

During the course of the reorganization proceedings and prior to the February 23 opinion of this court, Hellenic sought and obtained the bankruptcy court's permission to spend $420,000 in cash collateral which included freight money collected by Hellenic that was subject to arrest by ITO in the admiralty *in rem* proceeding. Permission to use this collateral was, of course, subject to the adequate protection provisions contained in 11 U.S.C. § 363(e), and the value of the substitute collateral was required to be at least equal to that which Hellenic was permitted to spend. On February 8, 1984, Hellenic filed a subsequent application for the use of cash collateral in the amount of $700,000 which was later withdrawn. On March 7, 1984, Hellenic submitted another application for the use of cash collateral in the amount of $31,400. Over the objections of ITO, Judge Lifland granted Hellenic's application. ITO has filed notices of appeal of both orders permitting Hellenic's use of cash collateral.

ITO contends that some of its claims against Hellenic vessels can be traced to the vessels and voyages identified by Hellenic as the source of this freight revenue. ITO also contends that Hellenic has or will have freights in New York that are or will become subject to ITO's arrest and asserted maritime lien. In view of the conversion of Hellenic's reorganization proceeding to a Chapter 7 liquidation, ITO asks this court to reconsider its February 23, 1984 ruling that *custodia legis* should not apply to arrested freights which were earned by vessels other than those arrested in this district. Bruce D. Scherling, Interim Trustee of Hellenic and its related companies (the "Trustee"), opposes ITO's motion on the ground that there is no competing admiralty concern to justify removal of the freights from the jurisdiction of the bankruptcy court based on an undocumented maritime lien claim. The Trustee further submits that he foresees no further expenditure of freight money and that the freight money will be distributed to allowed claimants in the course of administration of the debtors' estates.

■■■■ The basis for the court's determination in its opinion dated February 23, 1984 that the doctrine of *custodia legis* did not control was the fact that Hellenic was attempting to reorganize. Under the doctrine of *custodia legis*, the court that first secures custody of the property administers the property. *See, e.g., Ciel y Cia S.A. v. Nereide Societa di Navigazione per Azioni*, 1983 A.M.C. 1192, 1194 (E.D. Va.1983); *Belcher Co. of Alabama, Inc. v. M.V. MARATHA MARINER*, 1983 A.M.C. 2089 (S.D.Tex.1983). In the absence of a reorganization proceeding, *custodia legis* is the appropriate rule. As Professor Landers notes:

If admiralty jurisdiction is based on an in rem action, it is painfully simple to tell whether a vessel will be administered in admiralty or bankruptcy. The first court to obtain jurisdiction over the assets administers it. Thus, if the marshal, pursuant to admiralty process, has attached the vessel first, the admiralty court administers the asset. If the bankruptcy petition is filed before the marshal reaches the vessel, the bankruptcy court administers the asset.

Landers, The Shipowner Becomes a Bankrupt, 39 U.Chi.L.Rev. 490, 493–94 (1972). In a reorganization proceeding, Professor Landers notes that the prior custody of admiralty is irrelevant, explaining that the dominance of the bankruptcy court in reorganization is necessary because the goal of reorganization—continuation of the debtor's business—requires the supervision of a single court. In contrast, when a liquidation is contemplated, the principle of comity permits the court that first obtained jurisdiction over an asset to supervise its liquidation. *Id.* at 509. *See also* G. Gilmore & C. Black, *The Law of Admiralty*, § 9–92, at 807–08 (2d ed. 1975). Since Hellenic is no longer in reorganization, I conclude that *custodia legis* should control and Hellenic should pay into the registry of this court all freights collected which are subject to ITO's arrest.

Moreover, even if there are no further expenditures of the freights subject to ITO's lien claim prior to distribution of the proceeds to the claimants, there is a competing admiralty concern. The survival of ITO's maritime lien depends on an adequate identification of the freights collected, *i.e.*, a tracing of the freights back to the ships that earned them. In the case of the freights used as cash collateral, ITO's maritime lien will not follow the replacement collateral without such a tracing. Hellenic apparently has failed to provide such a tracing, thus necessitating ITO's appeal from the bankruptcy court's orders permitting the use of the freight revenue. An accurate voyage accounting of the freights within Hellenic's custody and control which were subject to arrest in the admiralty *in rem* proceeding is necessary for the protection of ITO and other maritime lien claimants.

Accordingly, Hellenic is hereby ordered to render an accurate voyage accounting of all freights in its custody or control earned by the M.V. HELLENIC EXPLORER,

M.V. HELLENIC GRACE, M.V. HELLEN-IC CHAMPION, M.V. HELLENIC CHAL-LENGER, M.V. HELLENIC VALOR and M.V. HELLENIC PRIDE, and to pay into the registry of the court all freights earned by the M.V. HELLENIC EXPLORER on voyages 24 in and 25 out, M.V. HELLENIC GRACE on voyage 20 out, M.V. HELLEN-IC CHALLENGER on voyage 24 out, M.V. HELLENIC CHAMPION on voyage 28 out, M.V. HELLENIC VALOR on voyages 21 and 22 in, and voyage 23 out, and M.V. HELLENIC PRIDE on voyage 28 out, and collected by Hellenic since December 12, 1983 for the purpose of distribution of such freights to maritime lien claimants.

IT IS SO ORDERED.