Susan ADAMS, Special Administrator for
the Estate of Louis J. Thomas,
Deceased, Plaintiff,

v.

S/V "TENACIOUS," official number
922070, her engines, tackle, furniture, in
rem; and Judy T. Robbins, individual,
and Thomas A. DeMichele, individual, in
personam, Defendants.

No. A96–0086 CV (JKS).

United States District Court,
D. Alaska.

Oct. 29, 1996.

Steven J. Shamburek, Farleigh & Shamburek, Anchorage, Alaska, and Jack H. Swift, Dupree & Associates, San Diego, California, for plaintiff.

A. Lee Petersen, Anchorage, Alaska, for defendants.

## ORDER

SINGLETON, Chief Judge.

Susan Adams ("Adams"), Special Administrator for the Estate of Louis J. Thomas, deceased, brings this action against the Steam Vessel Tenacious *in rem* and Judy T. Robbins ("Robbins"), owner-obligor, and Thomas A. DeMichele ("DeMichele"), obligor, *in personam* to foreclose a preferred ship's mortgage and collect damages based upon sums loaned Robbins and DeMichele secured by the preferred ship's mortgage on the Tenacious. Robbins filed for Chapter 13 bankruptcy and sought approval of a plan in the bankruptcy court that would stay foreclosure of the mortgage and sale of the vessel until she could fix it up and, as debtor in possession, sell it for its fair market value. Robbins did not challenge the mortgage in the bankruptcy court or contend that the obligation it secured was not in default. There is no issue at this juncture regarding priorities between lien claimants. Adams moves the Court for an order determining that the bankruptcy court has no jurisdiction over actions in admiralty regarding foreclosure of ship's mortgages. Consequently, Adams argues the Court should (1) conclude and declare that the automatic stay in bankruptcy (11 U.S.C. § 362) does not apply to preferred ship's mortgages and (2) permit foreclosure of the mortgage and sale of the Tenacious, which is in *custodia legis*, without regard to the pending bankruptcy. Docket Nos. 39 and 41. The motion is opposed. Docket No. 40.

■ United States Magistrate Judge Roberts, to whom this matter was initially referred, recommends that the motion be denied and the proceedings in the bankruptcy court be permitted to run their course. Docket Nos. 43 and 50.[1] This matter is now ripe for adjudication by the Court. Adams predicates this Court's jurisdiction on 28 U.S.C. § 1333 and the Ship's Mortgage Act, 46 U.S.C. §§ 30101–31343, 31304(b), 31325(c).

The Court has reviewed the record *de novo* and exercised its independent judgment. In order to resolve the pending motion, it is necessary to carefully describe the issue under consideration: Where a debtor has incurred a debt secured by a preferred ship's mortgage on her vessel, and while the vessel is in the process of being sold to satisfy the debt, the vessel's owner-debtor seeks the protection of the bankruptcy court, does the automatic stay provision of 11 U.S.C. § 362(a) prevent the confirmation of the sale of the vessel?[2]

■ By its terms, 11 U.S.C. § 362 would appear to prevent continuation of foreclosure proceedings and confirmation of vessel sales. Adams' reliance on *United States v. ZP Chandon*, 889 F.2d 233 (9th Cir.1989) is misplaced. There, the court was faced with a determination of priority between maritime liens for seaman's wages and a preferred ship's mortgage. The court held that § 362 did not prevent the creation of liens for seaman's wages. It distinguished an earlier case, *In re Alberto*, 823 F.2d 712, 722 (3rd Cir.1987), which held that § 362 did prevent the creation of intervening but unperfected ship's mortgages. Thus, whatever effect *Chandon* has on the enforcement, as opposed to the creation, of liens for seaman's wages, a matter this court does not address, *Chandon* has no impact whatsoever on the enforcement of preferred ship's mortgages. Finally, Congress has specifically addressed preferred ship's mortgages in § 362(b)(12), which exempts foreclosure of preferred ship's mortgages by the government under certain circumstances. This provision evinces Congress' conclusion that § 362 does apply to such mortgages in the absence of an exclusion. Because Article I, Section 8 of the Constitution vests in Congress the power to adopt laws governing bankruptcy, it is clear that § 362 is not unconstitutional as applied to ship's mortgages.

1. Magistrate Judge Roberts rejected Adams' objections, Docket No. 45, and request for oral argument, Docket No. 49. Docket No. 50.

2. The Court is not faced with two related questions: (1) Whether the bankruptcy court has jurisdiction under 11 U.S.C. § 105(a) to enter a specific stay of foreclosure and sale of the subject vessel in order to permit Robbins to perform her "plan"; and (2) whether the bankruptcy court has jurisdiction to determine lien priorities in a vessel or the validity of a preferred ship mortgage.

Adams contends that bankruptcy courts and their judges have no jurisdiction over admiralty claims, including claims based upon preferred ship's mortgages, and that therefore the bankruptcy court cannot consider a motion for relief from the automatic stay. In Adams' view this Court should lift the stay. *See* 11 U.S.C. § 362(d). The Court disagrees. Rhetoric aside, this is a run-of-the-mill bankruptcy case. Robbins, a debtor, asks for a breathing spell to pay her debts. The stay provides that breathing spell. There is nothing about this case which requires special skills or knowledge not possessed by an Alaska bankruptcy judge. In fact, given this state's extensive coastline, the frequency with which the fishing fleet encounters economic difficulties, and the consequent experience of the bankruptcy court, a bankruptcy judge is in a far better position to sort out the relative equities of this case. The Court no doubt has the authority to withdraw the reference and itself hear a motion for relief from stay. *See* 28 U.S.C. § 157(d); *Barona Group of the Capitan Grande Band of Mission Indians v. American Management and Amusement, Inc.,* 840 F.2d 1394, 1399 (9th Cir.1987), *cert. dismissed,* 487 U.S. 1247, 109 S.Ct. 7, 101 L.Ed.2d 958 (1988). The Court, however, believes this is not an appropriate case in which to exercise that discretion. There are no disputed issues of fact or law which require consideration of admiralty law to resolve. The sole question is one of bankruptcy law, *i.e.,* whether a debtor should have additional time to pay her debt. Any consideration of admiralty law would therefore be routine. Thus, there is no mandatory right to withdrawal. Nor, given the fact that this is a run-of-the-mill bankruptcy case, should the Court exercise its discretion to require a permissive withdrawal.

Oral argument has been requested but would not be helpful. The parties have had ample opportunity to develop their respective positions. *See* D.AK. LR 7.1(i); *United States v. Cheely,* 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992), *affirmed,* 36 F.3d 1439 (9th Cir.1994).

**IT IS THEREFORE ORDERED:**

Adams' motion to determine jurisdiction and confirm sale at **Docket No. 39** is **GRANTED IN PART and DENIED IN PART.** Adams' motion is **GRANTED** insofar as the Court has reviewed the jurisdictional issues raised by Adams and found them to be without substance. The Court has jurisdiction over the vessel both in admiralty, 28 U.S.C. § 1333, and in bankruptcy, 28 U.S.C. § 1334. For purposes of the bankruptcy proceedings, however, the Court has referred the matter to the bankruptcy court. 28 U.S.C. § 157(a); MISC.GEN.ORDER NO. 503 dated May 17, 1985. Adams' motion to confirm sale is **DENIED.** The automatic stay pursuant to 11 U.S.C. § 362 governs proceedings to enforce the preferred ship mortgage in this case unless and until the stay is lifted by the bankruptcy court. Should the bankruptcy court lift the stay, the parties shall so notify the Court.

### REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION TO DETERMINE SUBJECT MATTER JURISDICTION AND TO CONFIRM SALE

ROBERTS, United States Magistrate Judge.

The court has now before it a motion by the plaintiff to determine subject matter jurisdiction and to confirm sale. (Docket No. 39). Said motion is opposed by defendant Judy T. Robbins. (Docket No. 40; reply at docket No. 41). For the reasons stated below it is hereby recommended that the assigned district judge in this case determine that this court has jurisdiction over the parties' rights in this admiralty case, but that the motion to confirm sale be denied because the court's Article III powers have not been encroached upon by the automatic stay of this case resulting from the petition filed by the defendants before the bankruptcy unit of this court.

### BACKGROUND

In this admiralty action the plaintiff seeks money damages and to foreclose on a preferred ship mortgage. On July 17, 1996, one day after the defendants filed a petition in bankruptcy pursuant to Title 11 of the United States Code, the United States Marshal

conducted a sale of the vessel S/V TENA-CIOUS. The petition in bankruptcy was filed in the bankruptcy court of the District of Alaska.

## DISCUSSION

Adams argues that the automatic stay of this case pursuant to 11 U.S.C. § 362 is an unconstitutional usurpation of this court's admiralty jurisdiction. Robbins counter argues that the only issue here is whether or not the automatic stay applies to this case, and that Adams "urges this court to resolve a phantom jurisdictional controversy." At bottom, Robbins is correct. The bankruptcy judges of this district constitute a unit of this court. 28 U.S.C. § 151. Ergo, the defendants' petition in bankruptcy has been filed in this court and this court has jurisdiction over it. *In re Modern Boats, Inc.*, 775 F.2d 619, 620 (5th Cir.1985); *In re Louisiana Ship Management, Inc.*, 761 F.2d 1025, 1026 (5th Cir. 1985). Admiralty and maritime jurisdiction is vested in the district courts (Article III judges). Article III, Section 2, Clause 1 of the United States Constitution; 28 U.S.C. 1333. Thus, only an Article III judge of this court has jurisdiction to decide the plaintiff's claims in admiralty. *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84–87, 102 S.Ct. 2858, 2878–80, 73 L.Ed.2d 598 (1982). Therefore, the question of whether or not the Article III Judge assigned to this case retains jurisdiction over it is readily answered in the affirmative.

Adams conflates the automatic stay under § 362 with the Supreme Court's proscription in *Northern Pipeline Co.*, against intrusion on Article III jurisdiction. The court believes it has discovered where it is that Adams' analysis may have gone astray. Apparently, Adams is laboring under the misapprehension that application of the automatic stay to this case wrongfully divests the Article III judge of jurisdiction over her claims. If it did divest the Article III judge of her claims such divestiture would indeed be wrongful. The automatic stay does not, however, lead to the loss of jurisdiction which Adams contends it does. The distinction is between the legislative scheme for bankruptcy and its impact on the process by way of a

stay, as opposed to which "unit" of the court (an Article III judge or an adjunct Article I bankruptcy judge) shall preside over the adjudication of claims strictly within the province of the Article III court.

There is nothing in the automatic stay provision of 11 U.S.C. § 362 that prevents the Article III court from exercising its jurisdiction over the admiralty claims of this case. The bankruptcy proceedings will not be addressing the admiralty claims, and there is no reason not to allow the bankruptcy case to run its course. While it is true that this may lead to a result that moots the need for further litigation before the admiralty/Article III court, this is not a certainty. Rather, the statutory scheme for bankruptcy simply contemplates staying other matters while the debtor(s) exercise their rights in the Article I (bankruptcy) court. This is readily distinguished from *Northern Pipeline Co.*, since that case struck down as unconstitutional 28 U.S.C. § 1481 (now repealed) on the grounds that it constituted an unwarranted encroachment on Article III jurisdiction because it vested bankruptcy judges "with all of the 'powers of a court of equity, law, and admiralty,' ". *Id.* at 55 & 84–85, 102 S.Ct. at 2863 & 2878–79. Indeed, in *Northern Pipeline Co.*, after petitioning in bankruptcy court, Northern Pipeline Company filed a suit in bankruptcy court for alleged breaches of contract and warranty, as well as for alleged misrepresentation, coercion, and duress. The mere staying of the admiralty case while the bankruptcy court limits itself to bankruptcy matters bears no resemblance to the factual or legal issues of *Northern Pipeline Co.* Structuring this statutory scheme for bankruptcy is within Congress' ken. It does not implicate the need for guarantees of an independent judiciary that Article III provides. (**See** *Northern Pipeline Co.*, 458 U.S. at 57–60 & 77 n. 29, 102 S.Ct. at 2864–65 & 2874 n. 29).

Furthermore, Adams' reliance on *United States v. ZP Chandon*, 889 F.2d 233, 238 (9th Cir.1989) is misplaced. Adams submits that *ZP Chandon* stands for the rule that because the Bankruptcy Act omitted any reference to maritime law in § 362, maritime liens are not subject to the automatic stay. In fact, the

Ninth Circuit concluded only that seamen wages are not covered by § 362 because they are "sacred liens" and the court refused to believe that the drafters of the Bankruptcy Act would intend to casually rewrite through neglect and omission such a sacred principle of maritime law. *Id.* Adams refers the court to the comments of John H. Strausburger, "The ABC's of Admiralty and Bankruptcy in Concert or Conflict" 21 J.Mar.L. & Com. 273, 285 (April 1990). This aspect of Mr. Strausburger's article is anything but a tome, and raises as many questions as it pretends to answer. The fact is that preferred ship mortgages are not sacred liens, and there is no basis in law or reason for granting them the extra protection that the court in *ZP Chandon* granted seamen wages. If anything, the absence of prevenient measures by way of an exception such as those listed at § 362(b) militates against excepting preferred ship mortgages from the provisions of § 362(a).[1]

Excepting seamen as wards of the court with sacred liens, there is no reason why the Bankruptcy Act, and Article III adjudication of admiralty claims cannot ride in tandem. Contrary to the positing of Mr. Strausburger, the fact that "maritime lien law has been established or codified by Congress", does not make it reasonable to presume that Congress did not intend to stay the effectiveness of its statutes concerning maritime liens. Strausburger, "The ABC's of Admiralty and Bankruptcy in Concert or Conflict" 21 J.Mar.L. & Com. at 285. Where the Bankruptcy Act and other statutes/Acts can be interpreted together (**in pari materia**) they should be. Sutherland, Statutory Construction § 69.07. There is no authority for the proposition that maritime liens (other than seamen wage liens) have hegemony over this basic principle of statutory construction. **A fortiori,** Adams' contention that this court is

empowered to enter an order providing relief from the automatic stay to enforce the sale of the vessel is equally lacking in support in law or reason. In sum, the admiralty court has jurisdiction over the vessel, but the adjudication of Adams' preferred ship mortgage lien claims are properly stayed by 11 U.S.C. § 362. *In re Carlomagno Shipping, S.A.,* 185 B.R. 25 (E.D.La.1995).

Finally, some of the confusion in this case must be attributed to a line of cases which are at first glance similar, yet readily distinguishable from the case **sub judice.** As some of these cases are analyzed by Adams, they stand for the unsettling proposition that once a Chapter 11 bankruptcy petition is filed the proposed sale of the vessel to satisfy a maritime lien is stayed, and the admiralty court is deprived of jurisdiction over the vessel. (**See** *In re Louisiana Ship Management, Inc.,* 761 F.2d 1025, 1026 (5th Cir.1985); *In re Modern Boats, Inc.,* 775 F.2d 619, 620–621 (5th Cir.1985)). Reflecting upon these cases and other decisional law which discusses them reveals the limited context in which this rule is applicable. (**See also** *In re White,* 851 F.2d 170, 173 (6th Cir.1988); *MCorp. Financial v. Board Of Governors,* 900 F.2d 852, 856 (5th Cir. 1990); *In re George Wilson,* 17 Bankr.Ct. Dec. 750, 752 (E.D.PENN 1988)). There are two scenarios at work in these cases, and neither of them are at work in the case at bar. First, these cases often involve facts where an action is brought in state court, and subsequently the bankruptcy petition is filed resulting in a divestiture of state court jurisdiction. Indeed, neither *In re Louisiana Ship Management, Inc.,* nor *In re Modern Boats, Inc.,* inform the reader whether the **in rem** actions before the "admiralty courts" referred to respectively therein, and which were stripped of jurisdiction by the bankruptcy court, were in United States dis-

---

1. The Magistrate Judge is not unmindful of the fact that at first glance it may appear that he reached a different result when discussing *ZP Chandon* and Mr. Strausburger's article in the case of *Kesselring v. F/T Arctic Hero,* 1995 AMC 1322, 1326–1327, 1991 WL 692792 (D.Alaska 1991). However, that case involved liens which did "not constitute the kind of private right(s) 'so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary' ". *Id.;* discussing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 54–55, 109 S.Ct. 2782, 2796–97, 106 L.Ed.2d 26 (1989). The present case does not pose the question of whether a bankruptcy court can decide Adams' claims; rather the question is whether adjudication of those claims can be stayed under 11 U.S.C. § 362.

trict courts, or state courts entertaining admiralty cases under the "saving to suitors" clause of 28 U.S.C. § 1333. (**See** for example *Weason v. Harville,* 706 P.2d 306, 308 (Alaska 1985)). If that were the case those cases would present questions of law foreign to the issues at hand, since the instant case is concerned with the tension between bankruptcy and Article III jurisdiction.

The second scenario at work in these cases is where a vessel is under the jurisdiction of an Article III admiralty court, and a subsequent petition for bankruptcy is filed in a district's bankruptcy court. Traditionally, the doctrine of **custodia legis** provides that the first court to obtain **in rem** jurisdiction over the property (vessel) administers it. *Morgan Guar. Trust Co of N.Y. v. Hellenic Lines,* 585 F.Supp. 1227, 1229 (S.D.N.Y. 1984). Even if the doctrine of **custodia legis** has been thrown into doubt by *In re Louisiana Ship Management, Inc.,* or *In re Modern Boats, Inc.,* and their progeny, this does not run contrary to the above discussed rule that the admiralty court alone can adjudicate admiralty and maritime claims. More to the point for purposes of the instant case, as *Hellenic Lines* makes clear, the doctrine of **custodia legis** trumps bankruptcy court jurisdiction over bankruptcy related matters only within the context of the liquidation of an asset. *Id.* Otherwise, the bankruptcy courts have been properly invested by Congress under its Article I powers with jurisdiction over bankruptcy matters such as reorganization. *Northern Pipeline Co.,* 458 U.S. at 57–60 & 77 n. 29, 102 S.Ct. at 2864–66 & 2874 n. 29. This dominance of the bankruptcy court over reorganization is necessary because the goal of reorganization and continuation of the debtor's business requires the supervision of a single court. *Hellenic Lines,* 585 F.Supp. at 1229. As Adams' motion shows at Appendix A defendant Robbins has filed a petition for reorganization under Chapter 13 of the Bankruptcy Code. Hence, the doctrine of **custodia legis** is of no consequence here.

## CONCLUSION

For the foregoing reasons it is hereby recommended that the court find that it has jurisdiction over the plaintiff's claims but that adjudication of those claims is properly stayed pursuant to 11 U.S.C. § 362, and that the plaintiff's motion to confirm sale at Docket No. 39 be **DENIED.**

DATED at Anchorage, Alaska, this 20th day of September, 1996.

*FINAL RECOMMENDATION*
RE: PLAINTIFF'S MOTION TO DETERMINE SUBJECT MATTER JURISDICTION AND TO CONFIRM SALE

*ORDER*
RE: PLAINTIFF'S REQUEST FOR ORAL ARGUMENT

The Magistrate Judge has considered the plaintiff's objections and the defendant's response to his report and recommendation regarding the plaintiff's motion determine subject matter jurisdiction and to confirm sale. (Docket Nos. 43, 45 and 48). Additionally, the Magistrate Judge considers the plaintiff's request for oral argument filed at docket No. 49. Nothing in the briefing causes the Magistrate Judge to modify his recommendation that the assigned district judge in this case determine that this court has jurisdiction over the parties' rights in this admiralty case, but that the motion to confirm sale be denied because the court's Article III powers have not suffered an unwarranted encroachment by the automatic stay of this case resulting from the petition filed by the defendants before the bankruptcy unit of this court.

A few comments are in order. First, Adams' objections simply reargue her view of the Ninth Circuit's holding in *U.S. v. ZP Chandon,* 889 F.2d 233 (1989). The court will not again march through the defects in Adam's arguments. That is not the purpose of receiving objections to an initial recommendation. As Robbins correctly argues, *ZP Chandon,* expressly holds that 11 U.S.C. § 362 is applicable to land based transactions where a recording of a lien interest is required. *Id.* at 238. Ergo, ship mortgage at issue in this case is precisely the kind of action the Ninth Circuit held 11 U.S.C. § 362 to be applicable to.

Adam's notes that this court followed *ZP Chandon* in *Kesselring v. F/T Arctic Hero,* 1995 AMC 1322, 1326, 1991 WL 692792 (D.Alaska 1991), but Adam's objections fail to consider how the initial recommendation expressly distinguishes that case from the instant case. Furthermore, Adams seems almost disingenuous in arguing about the failure of this court to provide direction to the Bankruptcy Court in order to prevent the Bankruptcy Court from expanding its jurisdiction unconstitutionally. Should the bankruptcy division take such an unlikely course, the court has every confidence that Adams will alert the court of the need to steer this case back into a safe port.

Finally, Adams has requested oral argument. This request is tardy. D.Ak.LR. 7.1 instructs that a request for oral argument shall be filed "within 3 days after the date the last paper on that motion is filed." The papers to be filed in motion practice are: (1) motion; (2) opposition; and (3) reply. Waiting until after such briefing has been completed, an initial recommendation has been filed, and objections and responses thereto have been filed is far too late. Moreover, Adams' request does not lend any insight whatsoever into how oral argument would be beneficial in this particular case. Her contention that there is a "game" involving defendant/debtors in bankruptcy in Alaska, the Northwest and the Pacific Coast, holds no sway with the court. Cases are decided on the law, and usually not on a particular party's view of what the law should be. As stated in the initial recommendation, devising a statutory scheme for bankruptcy is within Congress' ken.

## CONCLUSION

For the foregoing reasons the Magistrate Judge hereby declines to modify his recommendation that the court find that it has jurisdiction over the plaintiff's claims, but that adjudication of those claims is properly stayed pursuant to 11 U.S.C. § 362, and that the plaintiff's motion to confirm sale at docket No. 39 be **DENIED.** Finally, it is hereby ordered that the plaintiff's untimely request for oral argument at Docket No. 49 is hereby **DENIED.**

DATED at Anchorage, Alaska, this 21st day of October, 1996.